### STURGESS GOODSELL *v.* LIVERIUS DUNNING.

The act of 1863 (Gen. Stats., tit. 7, secs. 193, 194, 195,) provides that any person may take possession of any animal unlawfully pasturing in the highway in front of his land, that he shall give immediate notice to the owner if known, and may demand a certain penalty and just damages, and that on payment the owner may recover the animal if applied for within twenty-four hours after the notice is given ; and that if the owner is not known or does not comply with the above requirement, the person taking up the animal shall lodge a description of him with the town clerk, who shall in a mode prescribed give notice of a sale. The defendant took up a horse of the plaintiff and immediately carried to his house the following written notice. " To *S. G.:* This is to notify you that I have taken up and impounded in my yard your horse, according to the laws of this state. *L. D.*" The plaintiff's house was forty rods from the defendant's, and the plaintiff had seen the horse taken. As the defendant approached the house, the door which had been open was shut and he was not able to gain admittance. He therefore put the notice in the handle of the door, where it was found the same forenoon by the plaintiff. At the end of twenty-four hours he lodged a description of him with the town clerk who published notice of the sale. The defendant the same day, not having conveniences for keeping the horse on his premises, took it to the town pound, nearly five miles distant, and went there by the longer of two equally good roads. It was found by the court however that he had been guilty of no want of care in the treatment of the horse and that he did not intend by placing it in the

---

* By an act passed by the General Assembly, May session, 1867, an annual term of the Supreme Court on the 2d Tuesday of August was established in the county of Litchfield. By a previous act the counties of Fairfield and Litchfield had constituted the Fourth Judicial District. See note, 33 Conn. R., p. 411.

pound to relinquish possession of it. Held—1. That the notice given to the plaintiff (aside from the question of its form) was sufficient. 2. That the notice did not necessarily imply that the horse was impounded under the general law with regard to impounding animals, but was sufficient under the act of 1863. 3. That there was nothing unlawful in the putting of the horse in the public pound for safe keeping. 4. That the defendant in the circumstances did not thereby abandon his original proceeding. 5. That as it was found that the defendant had been guilty of no want of care in the treatment of the horse, the fact of his taking him to the pound by the longer way, which was relevant solely to that question, was of no importance.

TRESPASS, for taking and carrying away a horse of the plaintiff, with a count in case for the injury of the horse by want of care and improper treatment while in the defendant's possession; brought originally before a justice of the peace and appealed by the defendant to the superior court in Litchfield county. The defendant pleaded the general issue, with notice that he should offer evidence to prove that the horse was lawfully taken up by him while unlawfully at large in the highway in front of his premises. The issue was closed to the the court and the following facts found by the court.

The plaintiff owned the horse in question, and on the 19th of May, 1864, turned it into the public highway for the purpose of pasturing there contrary to law. The defendant's house was about forty rods from the plaintiff's house, and on the morning of the 20th of May the defendant found the horse pasturing in the highway in front of his premises, and thereupon took him into his possession and shut him up in his yard. Immediately thereafter he wrote and carried to the plaintiff's house the following notice: "New Milford, May 20th, 1864. To Mr. Sturgess Goodsell. Sir: This is to notify you that I, Liverius Dunning, have taken up and impounded in my yard your horse, according to the laws of this state made and provided. Liverius Dunning." The plaintiff saw the defendant take his horse from the highway. As the defendant was approaching the house with the notice, the door, which had been standing open, was closed, and on his reaching the house he endeavored to gain admittance and an interview with the plaintiff, and for this purpose knocked

several times upon the door ; but, no one answering, he placed the notice in the handle of the door and returned home. The notice was found by the plaintiff early in the same forenoon. On the 21st day of May the defendant gave notice of the facts to the town clerk of the town, with a full description of the horse, and the town c.erk thereupon recorded the same in a book kept for that purpose and posted the same on the school house nearest the place where the seizure was made, and upon the public sign post nearest his office, with a notice, signed by himself as town clerk, that the horse would be sold at the sign post at public auction on the 4th day of June, 1864, at one o'clock P. M., if not previously released by the owner. On the same day, (May 21st.) the defendant, having no conveniences for keeping the horse on his premises, on consultation with and with the approval of the town clerk, left the horse in the town pound, a public pound which had been established in the town for many years. The defendant did not intend thereby to part with the possession of the horse, but to keep possession pursuant to the statute of 1863. Nor did he intend thereby to impound the horse in the usual way. On the same day the plaintiff, having ascertained that the horse was in the pound, without the defendant's knowledge obtained the key of the pound from the wife of the pound keeper, (her husband being absent and his duties being attended to by her in his absence,) and unlocked the gate and retook the horse, paying her fifty cents as poundage fee. The pound was the nearest one to the residences of the parties, but between four and five miles distant therefrom. The horse was led by the defendant's servant to the pound, by the longer of two ways, the difference being about twenty rods and both otherwise equally good. Ordinary care and prudence were exercised by the defendant in the seizure, custody and general treatment of the horse. When he went with the horse to the pound he found the same unlocked, and told the pound keeper that he wished to leave the horse in the pound, but gave no other directions and referred him for further instructions to the town clerk. When the horse was thus left the pound keeper supposed that it was left to be im-

pounded in the usual way. The defendant made no effort whatever to provide a place for the keeping of the horse nearer to the residence of the plaintiff.

The court assessed the damages at $5, if the plaintiff upon these facts was entitled to recover, and reserved the question for the advice of this court.

*Turrill* and *McMahon,* for the plaintiff.

1. The defendant could have impounded the horse, (Gen. Stat., tit. 7, sec. 190,) or he could have seized it and taken it into his custody under the act of 1863, (Gen. Stat., tit. 7, sec. 193.) He chose the latter remedy, and it being a special statute he was bound to follow it strictly, and to pursue his remedy in the exact manner pointed out in the statute. And he could not abandon it for any other remedy. *Sherman* v. *Braman,* 13 Met., 407 ; 1 Smith Lead. Cas., 62 ; *Six Carpenters' case,* 8 Coke, 290.

2. The notice given by the defendant is not such a notice as the statute requires. It does not notify the owner that the defendant had seized and taken into his possession the horse of the plaintiff, by authority of the 193d section, as required by section 194. Notice is required by statute to be given to the owner when animals are impounded from the highway. Gen. Stats., p. 130, sec. 190 ; p. 128, sec. 180. The mode of proceeding by the owner of the animal when seized under section 193, and that when they are impounded under section 190, are entirely different. The notice given by the defendant here is a notice of impounding. "Impound" means to put in a legal pound. 2 Burrill Law Dic., *in verbum.* A yard can be a pound. *Whitlock* v. *West,* 26 Conn., 406. The notice given was calculated to mislead the plaintiff, withholding from him information to which he was entitled by statute, and thus preventing him from redeeming his beast in a certain manner therein specified. *Coffin* v. *Field,* 7 Cush., 355 ; *Sanderson* v. *Lawrence,* 2 Gray, 178 ; *Sackrider* v. *M'Donald,* 10 Johns., 252 ; *Sherman* v. *Braman,* 13 Met., 407. The fact that the plaintiff saw the horse when the defendant took him up does not excuse the want of notice.

*Merritt* v. *O'Neil*, 13 Johns., 477; *Coffin* v. *Field*, 7 Cush., 355.

3. The statute requires that the person seizing should retain the possession of the animal. Secs. 195, 196 and 200. He must not impound it. The acts of the defendant on the 21st of May amount in law to a dispossession, and to an impounding, and are illegal. *Merritt* v. *O'Neil*, 13 Johns., 477. The horse was treated as impounded animals are; was put into the legal pound and into the custody of the pound keeper, a known public officer, who supposed it was impounded in the usual way. He was not the agent of the defendant, and in his official capacity could not be. *Hall* v. *Hall*, 24 Conn., 358. The intentions of the defendant are not material, and when the horse was once in the custody of the pound keeper, neither the defendant nor the town clerk had any further right to the possession. A pound is not intended to be used for the purpose claimed by the defendant, and could not legally be so used. *Whitlock* v. *West*, 26 Conn., 406; Gen. Stat., p. 127, sec. 177.

4. The defendant in taking the horse the distance he did, and the way he did, proceeded illegally. He was bound to keep the horse in his yard or in the neighborhood. The inconvenience does not excuse him, because he made no effort to obtain keeping near home or anywhere. The consent or approval of the town clerk does not alter the case. He was bound to go the shortest way to the pound if he had a right to go. He is like a distrainor or officer attaching property. 1 Swift Dig., 536.

5. These acts of the defendant make him a trespasser *ab initio*. They are not omissions only, but are such as render his whole acts illegal, and make him a trespasser. 1 Swift Dig., 536; *Williams* v. *Ives*, 25 Conn., 568; *Sackrider* v. *M'Donald*, 10 Johns., 253; *Merritt* v. *O'Neil*, 13 id., 477; *Adams* v. *Adams*, 13 Pick., 384; *Smith* v. *Gates*, 21 id., 55; *Coffin* v. *Field*, 7 Cush., 355. If these acts do not make the defendant a trespasser, yet they are such neglect and omissions as put the plaintiff to trouble and expense, and by which.

he was damnified, and for which he can recover on the count in case. *Waterbury* v. *Lockwood*, 4 Day, 257.

O. S. *Seymour* and *E. W. Seymour*, for the defendant.

HINMAN, C. J. This is an action of trespass for taking the plaintiff's horse. It was found in the highway in front of the defendant's land, and was taken up by him under the act of 1863, (Gen. Statutes, p. 130, secs. 193, 194, 195,) and the question in the case is, whether the defendant proceeded legally after having first taken the animal into his custody. The 194th section of the statute provides that when an animal is taken up under this act the person so taking it up shall give immediate notice to the owner, if known, and then provides that the owner shall be entitled to it, if applied for within twenty-four hours after such notice shall have been given, on paying a certain fee and just damages for injuries sustained. In this case the owner was known, and it is claimed that the notice which the statute requires was not given. The finding, however, as we think, shows that proper notice was given, or, at least, that the plaintiff had notice. It is true notice is not expressly found, but facts are found from which the inference is irresistible that the plaintiff had notice. The parties were neighbors, residing within forty rods of each other, and the plaintiff in fact saw the defendant take the horse into his custody. As it was taken up from the highway opposite the defendant's land, where, under this statute, the defendant had a right to take it, the plaintiff may well be presumed to have known that the horse was taken up because it was trespassing there, and when, in connection with this, it appears that the defendant went with a written notice to the plaintiff's house, and the door was closed upon him, and he could not gain admittance in order to deliver it, justice requires that the plaintiff should be held to have received notice of all which the writing contained. But the written notice was placed in the handle of the door, and it appears that the plaintiff got it in the forenoon of that day. We think this was notice enough to have justified any court in finding it

directly, and it would have been error if it had been found there was no notice.

It is said however that the writing was not a sufficient notice in point of form, because it does not state that the defendant had taken the horse under the 193d section of this act. The plaintiff must be presumed to have known the law in regard to taking up animals in the highway against another's land, and with this knowledge he is informed that his horse has been taken and impounded in the defendant's yard according to the laws of the state. But this could be lawfully done only by virtue of this section of the act. We think, therefore, that this was in substance informing him that the animal had been taken up under this section.

It is said again that the word "impounded" used in the notice has a technical meaning which excludes the idea that the horse was taken under the act of 1863, and implies rather that it was taken under the old statute in relation to pounds. Perhaps this might be so if the words "in my yard" had not been used in connection with the word "impounded," showing that it was a different impounding from that intended by the old statute; and there is no other lawful mode of impounding except under the provisions of this statute of 1863.

The statute requires the giving of immediate notice. This means, of course, reasonable notice. No particular form of notice is required, and it need not be in writing. The cases cited, therefore, which arose under statutes different from this, where notice in writing, and the particulars of the notice, are prescribed, have no application here.

It is claimed, in the next place, that the defendant's treatment of the horse while in his custody and possession was such as to render him a trespasser *ab initio*, notwithstanding the first taking might have been lawful.

The horse was taken up, as we have seen, under the statute of 1863, and it is claimed that after it had been kept in the defendant's yard for a day or more, he changed his mind in respect to the law under which he would act, and attempted to turn the transaction into an ordinary impounding under

the former statute, and for that purpose placed the horse in the town pound. It is not claimed by the defendant that this could legally be done, and it is very clear that it could not. He did however put the horse in the town pound, and the questions arise, first, whether by this act he abandoned the ground upon which he first took up the horse, and, second, whether this act was such an abuse of his authority as renders him a trespasser *ab initio*. The horse was taken up on the 20th of May, and after the twenty-four hours within which the plaintiff could have regained possession of it had elapsed, the defendant gave the requisite notice to the town clerk, who took the proper steps to dispose of the animal according to the law, and he accordingly advertised a sale of it on the 4th of June then next. In the meantime, as it was necessary that it should be properly kept and cared for, and as he had not himself conveniences for so keeping it, he, with the advice of the town clerk, put it in the town pound for safe keeping. Now there can be no doubt but that this putting of the horse in the pound is strong evidence that he then intended to impound it in the ordinary way, under the old statute, and not under the statute of 1863, and so is, of course, evidence of a change of the ground upon which he first took it. He could not lawfully do this, and if this circumstance had not been explained, and the inference repelled by the express finding to the contrary, we might subject the defendant on this ground. But, as we have said, the finding is directly to the contrary, and it is moreover found that ordinary care and prudence were exercised by the defendant in the seizure, custody and general treatment of the horse. There is therefore no ground for any presumption of fact on the subject; and the only claim must be that the keeping of the horse in the town pound was irregular in point of law after a seizure under the act of 1863. And although it is true that this is not the use for which such pounds are built, if even it be assumed, as is claimed by the plaintiff, that such use of them is illegal in the sense that it is unauthorized, still we do not see what right the plaintiff has to complain of it, so long as his horse was kept with ordinary care and prudence. We are of

opinion therefore that there is nothing in this fact that will render the defendant liable.

That this pound to which the animal was taken was some four or five miles from the residence of the defendant, or that the road by which he took it there was a few rods longer than another road which he might have taken, are matters of no importance except as evidence tending to show that proper care was not taken of the animal ; and this was a fact for the superior court to find, and the finding upon it being full to the effect that proper care was taken in the custody and general treatment of the animal, we do not see how it can be determined as matter of law that the authority which the statute gives was abused by the defendant.

We therefore advise the superior court to render judgment in favor of the defendant.

In this opinion the other judges concurred.